# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MICKEY DEANGELO MASON,**

    **Plaintiff,**

vs.                                                     Case No. 17–cv–1025–DRH

**UNKNOWN PARTY, and**
**INTERNAL AFFAIRS**

    **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Mickey Mason, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests monetary damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### Complaint and Procedural History

Plaintiff originally filed suit in Case No. 17-cv-867-DRH-RJD ("17-867") on August 15, 2017. On September 21, 2017, the Court determined that Plaintiff had stated unrelated claims and directed that Count 4 be severed into this action. (Doc. 1). Plaintiff filed a motion requesting reconsideration of that order, or in the alternative, dismissal of the severed claims in Case No. 17-867 on October 2, 2017. (17-867, Doc. 16). That motion remains under advisement. On October 18, 2017, Plaintiff filed a Motion to Proceed with Count 4, indicating that since the Court had already assessed a filing fee in this case, he no longer wished to dismiss this case as an alternative if the Court declined to grant his motion to reconsider. (Doc. 7). Plaintiff's motion requesting to withdraw his prior request of conditional dismissal is **GRANTED**. (Doc. 7). Although the Court is

2

proceeding with screening in this case, the Court does not intend this screening order to speak to Plaintiff's request for reconsideration; that motion remains under advisement in Case No. 17-867.

As relevant to the claim in this case, Plaintiff alleges that he wrote to the Illinois State Police twice, but got no response because his mail was being thrown away. (Doc. 2, p. 8). He was finally able to get a letter to the State Police via certified mail on May 13, 2016, although he alleges that the mailroom staff put the wrong year on his receipt. *Id.* Plaintiff then began to notice that all of his incoming legal and privileged mail from government officials was being tampered with. *Id.* He also alleges that his outgoing legal and privileged mail took 7 to 10 days to clear the mailroom. *Id.*

At an unspecified time, "mailroom/internal affairs" started steam opening all of Plaintiff's incoming legal and privileged mail because they were aware that Plaintiff was trying to press charges against William Spiller, an IA officer. *Id.* Specifically, on November 9, 2016, Plaintiff received a piece of certified legal mail that had been opened and read outside of his presence; he also alleges that his signature was forged on the receipt. *Id.* He also received a piece of certified legal mail 18 days after the postmark that had been opened and read outside of his presence on November 28, 2016. (Doc. 2, p. 9). This significantly cut into Plaintiff's 30 day deadline to appeal a ruling in that case. *Id.* Like the other piece, Plaintiff's signature had been forged to confirm delivery of the certified mail. *Id.* He received another piece of legal mail postmarked November 8, 2016 on

November 30th, also opened and read outside of his presence. *Id.* Plaintiff experienced many other instances of this happening. (Doc. 2, p. 11).

The mailroom staff stopped sending Plaintiff his money voucher receipts for sent mail. (Doc. 2, p. 10). When he complained, they returned them with a middle finger drawn on the back. *Id.*

## Discussion

The severance order designated 1 claim for this lawsuit:

**Count 4 –** First and/or Fourteenth denial of access to courts claim against the Mailroom Staff and Internal Affairs for regularly interfering with Plaintiff's personal and legal mail in 2016-17.

As to Plaintiff's **Count 4**, the First Amendment protects inmates' right to send and receive mail. *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999). Different standards are applied depending on whether the correspondence is legal mail or non-legal mail. It is worth noting that the law does not distinguish between privileged mail and non-privileged mail, categories created by the Illinois Administrative Code. Plaintiff has alleged that his "privileged legal mail" was interfered with, but it is not clear from that description what standard applies because Plaintiff appears to be using "privileged" and "legal" interchangeably when they are not equivalent terms. The Court will therefore consider both standards.

Courts are concerned with prison regulations or policies regarding legal mail that may interfere with an inmate's right of access to the Courts. *Rowe*, 196 F.3d at 782; (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). Courts are also particularly sensitive to action that may interfere with the attorney-client

4

relationship. *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005) (prison officials may violate an inmate's constitutional rights when they open mail from an attorney that is marked "legal mail"). *Wolff v. McDonnell*, 418 U.S. 539, 574-77 (1974) (noting that correspondence between attorney and client may be deserving of protection due to concerns about the traditional attorney-client relationship).

Here Plaintiff has alleged that his legal mail was opened and delayed on numerous occasions. Plaintiff has also specifically alleged that at least once, legal mail which contained a court deadline was held by the mailroom, cutting into his time to respond. He has further alleged that this conduct was intended to discourage him from litigating against William Spiller. Plaintiff has not specifically pleaded that he was prejudiced in any case by such conduct, but he has implied that it may be part of a larger pattern or practice. The Court will therefore give Plaintiff an opportunity to develop his claims further by allowing Plaintiff's claim that his legal mail was interfered with to proceed.

As to non-legal mail, policies and practices addressing incoming non-legal mail must be reasonably related to legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989). Prison security is the type of important penological interest that requires accommodation with a prisoner's First Amendment rights. *Gaines v. Lane,* 790 F.2d 1299, 1304 (7th Cir. 1986). Opening non-legal mail does not state a claim; prison officials are authorized to conduct searches of mail. *See Rowe v. Shake*, 196 F.3d 778, 782 ("prison security is 'a sufficiently important governmental interest to justify limitations on

a prisoner's first amendment rights' "); *Smith v. Shimp*, 562 F.2d 423, 425 (7th Cir. 1977). A valid claim for other interference with non-legal mail requires an allegation that there has been "a continuing pattern or repeated occurrences" of mail interference. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (citing *Rowe*, 196 F.3d at 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir. 1987).

Here Plaintiff has adequately alleged that there were multiple instances of interference with his mail, including delays and lost mail. At the pleading stages, these allegations are suggestive of a pattern or practice. Plaintiff shall be permitted to develop this claim further, and it will survive threshold review.

As a final matter, Plaintiff has named only John Doe defendants in connection with this claim. The Court shall therefore add Jacqueline Lashbrook in her official capacity as Warden of Menard to this case for the sole purpose of identifying the John Doe defendants.

### Pending Motions

Plaintiff's Motion for Recruitment of Counsel will be referred to a United States Magistrate Judge for disposition. (Doc. 4).

Plaintiff's Motion to Proceed with Count 4 is **GRANTED**. (Doc. 7).

### Disposition

**IT IS HEREBY ORDERED** that **Count 4** survives threshold review. The Clerk of Court is **DIRECTED** to add Jacqueline Lashbrook to the docket in her official capacity for the purpose of identifying Menard mailroom staff and any

internal affairs members involved in processing Plaintiff's mail during the relevant time period.  Plaintiff's Motion to Proceed with Count 4 is **GRANTED**.  (Doc. 7).

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendant Lashbrook:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation

of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Digitally signed by Judge David R. Herndon
Date: 2017.11.06 13:07:40 -06'00'

**United States District Judge**