# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MICKEY DEANGELO MASON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:17-CV-01025-GCS** |
| | ) | |
| | ) | |
| **CYNTHIA GIMBER, DEVON CREATH,** | ) | |
| **AMY BARBEAU, CARRIE SHEMONIC,** | ) | |
| **FALYNNE MUZZY,** | ) | |
| **TYLER BRADY, MISTI NEW, PAM** | ) | |
| **SCOTT, COURTNEY BUSKIRK,** | ) | |
| **NATHAN MCCARTY, BRYAN** | ) | |
| **CHILDS, KYLE HUGHEY,** | ) | |
| **NATHANIAL WARD, CALEB ZANG,** | ) | |
| **JESSICA DEAN, JACQUELINE** | ) | |
| **LASHBROOK, ROBIN ROWWOLD,** | ) | |
| **KELLY PIERCE, and KIMBERLY** | ) | |
| **BUTLER,** | ) | |
| | ) | |
| **Defendants.** | | |

## MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Defendants' motion for summary judgment. (Doc. 119). Plaintiff Mickey Deangelo Mason opposes the motion. (Doc. 126, 127). Based on the record, the applicable law, and the following, the Court **GRANTS** the motion.

On August 15, 2017, Mason filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarnated at Menard

Correctional Center ("Menard") in case number 17-cv-867-DRH. (Doc. 2). Thereafter, the Court determined that Mason's complaint stated unrelated claims and directed that Count 4 of his complaint be severed into this case. (Doc. 1).[1] On November 6, 2017, the Court screened Mason's complaint pursuant to 28 U.S.C. § 1915A and allowed the following claim to proceed:

> Count 4 – First and/or Fourteenth denial of access to courts claim against the Mailroom staff and Internal Affairs for regularly interfering with Plaintiff's personal and legal mail in 2016-17.

(Doc. 8).

On November 26, 2018, then Magistrate Judge Wilkerson appointed attorney Peter Herzog to represent Mason. (Doc. 70). Thereafter, the undersigned held a status conference and granted Mason's motion for leave to file an amended complaint on February 7, 2019. (Doc. 91). That same day, Mason filed his Second Amended Complaint against Jacqueline Lashbrook, Courtney Buskirk, Kimberly Butler, Tyler Bradley, Robin Rowold, Caleb Zang, Cynthia Gimber, Misti New, Jessica Dean, Carrie Shemonic, Bryan Childs, Kyle Hughey, Kelly Pierce, Nathan McCarty, Falynne Muzzy, Nathaniel Ward, Devon Hemann (Creath), Pam Scott and Amy Barbeau. (Doc. 92).[2]  The Second Amended Complaint contains the following counts: Count I – against all Defendants for interference

---

[1]     This case was reassigned to the undersigned for final disposition on December 11, 2019 (Doc. 125).

[2]     In the Amended Complaint the "Mailroom Defendants" are Gimber, Creath, Barbeau, Shemonic, Muzzy, Bradley, New, Scott, Buskirk, McCarty and Childs. The "Internal Affairs Defendants" are Hughey, Ward, Zang and Dean, and the remaining Defendants are Lashbrook (Warden), Rowold (Counselor), Pierce (employee) and Butler (employee).

with legal mail from 2016 to 2018 and Count II – against all Defendants for interference with non-legal mail from 2016 to 2018.

FACTS

On August 28, 2019, a notice of settlement was filed in three cases in this judicial district where Mason was the plaintiff: *Mason v. Spiller*, 17-867-NJR; *Mason v. C/O Freeman*, 18-2029-NJR; and *Mason v. Lashbrook*, 17-1026-SMY.[3] In *Mason v. Spiller*, 17-867-NJR, Mason alleged misconduct in violation of the Eighth Amendment by correctional sergeant William Spiller and several other Menard Correctional officers. The misconduct allegedly occurred on April 1, 2016.

At all relevant times, Mason was incarcerated at Menard, and he was seeking to overturn his criminal conviction.[4] Mason was convicted of first-degree murder and sentenced to 45 years, which included 20 years for personally discharging a firearm during the course of the offense. *See People v. Mason*, 08-CR-18393. His conviction was affirmed by the Illinois First District Appellate Court on October 11, 2012. *See People v. Mason*, 2012 IL App (1st) 110451-U, (Ill. App. 1 Dist., Oct. 11, 2012). The Illinois Supreme Court denied his appeal on January 30, 2013. *See People v Mason*, 982 N.E.2d 772 (Table), 367 Ill. Dec. 622 (2013). Thereafter, on November 4, 2016, the Illinois First District

---

[3]   In 17-867-NJR, Mason is represented by Court appointed counsel Brenda G. Baum of HeplerBroom LLC. Mason is proceeding *pro se* in the other two cases.

[4]   Courts can take "[j]udicial notice of historical documents, documents contained in the public record, and reports of administrative bodies." *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

Appellate Court affirmed the dismissal of Mason's post-conviction relief motion. *See People v. Mason*, 2016 IL App (1st) 140132-U, 2016 WL 6585268 (Ill. App. 1. Dist., Nov. 4, 2016). Subsequently, on March 28, 2017, the Illinois Supreme Court denied Mason's petition for leave to appeal from the Illinois First District Appellate Court, 1-14-0132. *See People v. Mason*, 80 N.E.3d 5 (Table), 414 Ill. Dec. 272 (Ill. 2017).

Defendant Jacqueline Lashbrook was the warden of Menard from January 2017 through January 2019. Defendant Robin Rowland has been a corrections counselor at Menard since at least January 1, 2016. Defendant Kelly Pierce has been a Grievance Officer at Menard since January 1, 2016. Defendant Kimberly Butler was the warden of Menard from April 2014 to April 2016.

Mason alleges that on or about April 4, 2016, he filed a grievance alleging misconduct by Spiller and the other officers. Mason alleges that he informed Internal Affairs at Menard about Spiller's alleged misconduct the next day. Mason also alleges that on April 7, 2016, he sent a letter to the Illinois State Police requesting charges be pressed against Spiller. He also alleges that he filed additional grievances regarding the alleged April 1, 2016 misconduct.

Mason alleges that Mailroom Defendants and/or Internal Affairs Defendants open and search certain incoming and outgoing mail in the Menard mailroom. On or around May 2016, Mason alleges that some or all of the Defendants opened, delayed, or otherwise improperly handled some or all of his incoming and outgoing mail, both legal

and non-legal. Mason contends that on May 13, 2016, Defendants improperly opened and read mail marked Legal/Privileged.

Mason claims that on multiple occasions he paid for postage and delivered a letter to be mailed to the Randolph County State's Attorney's Office in which he complained that Spiller and Orange Crush officers assaulted him, but the letters were not received by the Randolph County State's Attorney's Office. Mason further claims Defendants improperly disposed of the letters instead of mailing the letters. He further claims the Mailroom Defendants improperly delayed the sending of his letter to the Randolph County State's Attorney's Office that he brought to the mailroom on May 24, 2016.

Mason also asserts that on or about July 13, 2016, Defendants improperly opened and read Legal Mail from the State Appellate Defender that was subject to the attorney-client privilege. Mason further asserts that on or about July 27, 2016, he received legal-oriented mail that was held for six days by the Mailroom Defendants.

Mason alleges that on August 1, 2016, the Mailroom Defendants sent back a payment voucher for mail sent to Leslie McCarty of the Administrative Review Board ("ARB") with a drawn "middle finger" on it. He also alleges that on September 22, 2016, the Mailroom Defendants refused to mail two legal petitions that were addressed to the Clerk of the Circuit Court of Cook County.

Mason also alleges that on or about October 6, 2016, Defendants improperly opened and read mail marked Legal/Privileged. Thereafter, on November 4, 2016, Defendants improperly opened and read Certified Mail from the Clerk of the Appellate

Court. He contends that the aforementioned mail was postmarked November 4, 2016, but he did not receive the mail until five days later. He further contends that after November 8, 2016, the Defendants improperly opened and read Certified Mail from Maria Maher, Courts Services Administrator, Office of the Chief Judge, at the Richard Daley Center in Cook County, Illinois, that was postmarked November 8, 2016. He alleges the Mailroom Defendants improperly delayed this mail as he received it on or about November 30, 2016.

Mason further avers that after November 10, 2016, Defendants improperly opened and read Certified Mail from the Appellate Court and that the Mailroom Defendants improperly delayed providing him this mail. He received the mail 18 days after the postmark date. According to Mason, this left him 12 days or less to appeal the Appellate Court's decision.

Mason also avers that on or about December 1, 2016, Defendants again improperly opened and read mail marked Legal/Privileged.

Shortly after January 10, 2017, Mason alleges that Defendants improperly opened and read mail from the Clerk of the Illinois Supreme Court addressed to him. Mason

asserts that this mail was postmarked January 10, 2017, and he received it on or about January 13, 2017.

Next, Mason alleges that after June 19, 2017, Defendants improperly opened and read mail from the Clerk of the Illinois Supreme Court.

Further, Mason alleges that after June 23, 2017, Defendants improperly opened and read Legal Mail (envelope marked "Legal Mail" and postmarked June 23, 2017) subject to the attorney-client privilege from the Illinois Innocence Project at the University of Illinois at Springfield ("Innocence Project").

Mason further alleges that Defendants improperly opened and read mail from the Clerk of the Illinois Supreme Court.

Mason also alleges that on September 22, 2017, he mailed a letter with affidavits and other exhibits to the Innocence Project. Mason contends this was "Legal Mail' subject to the attorney-client privilege. He also contends that Defendants intentionally and improperly opened, read, and removed exhibits from this mailing. Further, Mason alleges that on October 30, 2017, the Innocence Project informed him that Exhibit G and Exhibits 15-21 were missing from this mailing.

On or around November 27, 2017, Mason alleges he received a mailing from the Clerk of the Circuit Court of Cook County that was improperly delayed by the mailroom Defendants for 11 to 12 days. Mason alleges that this mail asked him to sign certain forms

and return the forms promptly so that defendants could be served in the Cook County case.

Additionally, Mason alleges that on or about August 25, 2018, Defendants improperly opened and read his mailing of 60 pages to the Illinois State Police. He also alleges that on or about September 2018, Mason mailed a 50-page document concerning a criminal case to William G. Sheehan, a private investigator and that Mr. Sheehan never received the mailing. Mason asserts that Defendants improperly interfered with this mailing.

Next, Mason alleges that after October 10, 2018, he received a manila envelope from Attorney Brenda G. Baum with documents missing. Mason claims that this was "Legal Mail" subject to the attorney-client privilege and that the mailroom Defendants interfered with this mailing. Likewise, Mason alleges that on October 19, 2018, he received Legal Mail from the HeplerBroom law firm that had been opened, read and had several documents missing. He claims that Defendants improperly opened, read and interfered with the mail.

Mason contends that on October 26, 2018, Defendants again improperly, opened, read and delayed Legal Mail from the State Appellate Defender. He claims it was postmarked on October 26, 2018 and that he received it on November 2, 2018. He also claims that this mailing contained a document informing him that any petition for rehearing regarding the court decision was due on November 8, 2018 and that he missed the deadline to file the petition because of the allegedly improper delay. Defendants

Barbeau, Bradley, Buskirk, Butler, Childs, Dean, Gimber, Hughey, Lashbrook, McCarty, Muzzy, New, Pierce, Rowold, Scott, Shemonic, Creath, Ward, and Zang deny ever interfering with Mason's mail as alleged by Mason.[5]

Mason contends that the alleged incidents of the opening of his mail occurred outside his presence. Mason also asserts that his Fourteenth Amendment claim arises from the alleged interference with his attempts to appeal his criminal conviction, and not the settled civil rights suits.

### LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011).

---

[5]     Defendant Creath testified it was his and the mailroom's practice to open Mason's mail to/from the Illinois State Police and Illinois Attorney General.

As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). The Court's role at summary judgment is not to evaluate the weight of evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *See Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id.* (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id.* at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)).

To establish a violation of the right to access to the courts, an inmate must show "that unjustified acts or conditions" (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous claim. *See Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998). The inmate must also show that actual injury (or harm) resulted. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 351 (1996)(holding that prior Supreme Court precedent

did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). *See also* PATTERN CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT, 8.02 (rev. 2017). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoners's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Inmates have a First Amendment right both to send and receive mail. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir.1999). That right, however, does not preclude prison officials from examining mail to ensure that it does not contain contraband. *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

The Seventh Circuit is particularly concerned about regulations or practices that affect legal mail because such interferences could impede a prisoner's right of access to the courts. *See Rowe*, 196 F.3d at 782 (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). An inmate's legal mail[6] is entitled to greater protections because of the potential for interference with his right of access to the courts. *Id*. The Seventh Circuit has clarified that, because a confidential communication with a lawyer is aimed to win a case rather than to enrich the marketplace of ideas, it is "more straightforward" to view a claim regarding interference with legal mail as infringing on the right of access to the courts as opposed

---

[6]     Legal mail has been described as "mail designated as correspondence with an attorney[.]" *Harrison v. Cty. of Cook. Ill.*, No. 09-1747, 364 Fed. Appx. 250, 252 (7th Cir. Jan. 29, 2010).

to the right of free speech. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010). *See also Delgado v. Godinez*, No. 16-1329, 683 Fed. Appx. 528, 529 (7th Cir. Apr. 27, 2017)(noting that "inhibiting private communication with an attorney may constitute a denial of meaningful access to the courts."). Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577; *Castillo v. Cook Cty. Mail Room Dep't*, 990 F.2d 304, 305–306 (7th Cir.1993). Not every letter from a law office or the court, however, qualifies as privileged legal communication to be opened in the presence of the inmate. *See Guajardo-Palma*, 622 F.3d at 805-806; *Harrison* 364 Fed. Appx. at 253; *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987).

To maintain a claim for denial of access to the courts based on the improper opening of, or interference with privileged legal mail, a plaintiff must demonstrate some hindrance to his ability to prosecute a meritorious legal claim. A general policy or practice of opening and reading mail may be sufficient to show hindrance. Isolated incidents of interference with legal mail, however, are generally insufficient to maintain a claim. *See Bruscino v. Carlson*, 654 F. Supp. 609, 618 (S.D. Ill. 1987). Moreover, no constitutional claim is stated unless the element of prejudice is met. *See Guajardo-Palma*, 622 F.3d at 805-806.

It is well established that "[f]or constitutional violations under § 1983 . . . a government official is only liable for his or her own misconduct." *See Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (internal quotations and citation omitted). "This means that

to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). However, "[a]n inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-782. *See also Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)(stating that "a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

## ANALYSIS

Defendants argue they are entitled to summary judgment on Mason's claims that they denied him access to the courts. Specifically, Defendants argue that Mason fails to show he was denied access to the courts as to his civil suits and as to the appeal of his criminal conviction. With respect to his civil suits, Defendants argue that Mason cannot show that he suffered any actual injury because he globally settled all three civil suits on August 28, 2019. Regarding his criminal appeal, Defendants argue that this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because Mason's conviction stands, and

he cannot show that mail interference hindered his efforts to appeal his conviction. Defendants also contend that they are entitled to summary judgment as Mason cannot establish personal liability as to any named Defendant and that they are entitled to qualified immunity.

Mason counters that the Court should deny the motion because he has presented evidence demonstrating a pattern and practice of interference with his Legal Mail. In particular, Mason contends that he has presented evidence of 9 incidents of interference with his privileged Legal Mail from April 2016 until he was transferred in June 2019 and that he has presented 13 incidents of interference with legal orientated mail over the same period of time. Further, Mason maintains that he has established that Lashbrook (Warden from 2017-19), Rowold (Corrections Counselor), Butler (Warden from 2014-16), and Pierce (Grievance Officer) were aware of the interference with his mail and did nothing to rectify the situation.

Defendants argue that Mason has failed as a matter of law to show that he was denied access to the courts with respect to his civil suits. Specifically, Defendants argue that Mason asserted in his deposition that his Fourteenth Amendment claim only pertains to his efforts to appeal his criminal conviction. Mason admitted this fact in his response to the motion for summary judgment. Mason settled his three civil suits and thus cannot show that he suffered an actual injury in that he was able to litigate and resolve his cases favorable to his interests.

Next, Defendants claim that Mason's denial of access to the courts claim against them, as it relates to his post-conviction proceedings, is barred by the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck,* the Supreme Court held that a prisoner is barred from pursuing a § 1983 claim when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck,* 512 U.S. at 487. *Heck* bars a prisoner from seeking damages for denial of access to the courts until his conviction is overturned or invalidated. *See Hoard v. Reddy*, 175 F.3d 531, 534 (7th Cir. 1999). This is because a claim regarding denial of access to the courts requires that an inmate show an actual injury. *See In re Maxy,* 674 F.3d 658, 661 (7th Cir. 2012). *See also Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009)(noting that an inmate's right "is violated when a prisoner is deprived of such access and suffers actual injury as a result."). An inmate must allege "that some action by the prison has frustrated or is impeding an attempt to bring a non-frivolous legal claim." *Id.* at 662. However, under *Heck,* "where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated." *Hoard*, 175 F.3d at 534. *See also Nance v. Vieregge,* 147 F.3d 589, 591 (7th Cir. 1998)(stating that "the holding of *Lewis* that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of *Heck,* means that a prisoner in [plaintiff's] position must have the judgment annulled before damages are available.").

Here, Mason cannot meet his burden of proof on his claim for denial of access to the courts without showing that his conviction has been overturned. While Mason tries to distinguish his case, the Court finds that the facts in this case are very similar to those presented in *Hoard.* In *Hoard,* the inmate sought damages from the correctional facility for denying him access to the courts "by hindering his efforts to litigate a state-court collateral attack on his conviction." *Hoard*, 175 F.3d at 532. The Seventh Circuit affirmed the dismissal of Hoard's case under *Heck,* noting that an inmate complaining that prison officials hindered his attempts to overturn his conviction is not entitled to damages until such conviction is actually set aside. *Id*. at 534.

In this case, Mason argues that Defendants' interference with his mail prevented him from successfully obtaining free legal representation from the Innocence Project and his family had to hire and had to pay for an attorney to try to overturn his state court criminal conviction. In *Hoard*, the inmate was not barred from forever pursuing state post-conviction remedies, and in *Nance,* the appellate court noted that relief in that case was not *impossible* as the inmate could have sought a pardon from the governor. Clearly, even if, as the Court stated in *Hoard,* there is an exception to the *Heck* bar for those cases in which it is impossible for an inmate to get his conviction overturned, Mason does not fall within that exception. Mason has never alleged that there are no further options for him to pursue to try to overturn his conviction. Mason does not state or otherwise indicate that he has been forever foreclosed from pursuing any postconviction remedy at the state level or pursuing a state court collateral attack.

Mason acknowledges the binding effect of *Heck*, *Nance* and *Hoard*, but argues that the outcome would be different if the Seventh Circuit were to address the issue of damages in the context of his claims. Specifically, Mason relies on a discussion in *Hoard* of the paradox of precluding a claim for damages because the plaintiff had not demonstrated that his conviction was overturned. The Seventh Circuit explained the paradox as follows:

> A claim for damages in respect of an unconstitutional denial of access to the courts, unlike a claim of damages for an unconstitutional conviction, does not require the plaintiff to prove that, had it not been for the denial, he would have won his case. It is enough that his case was not frivolous. We held this in *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998), picking up a broad hint in *Lewis v. Casey*, 518 U.S. 343, 353 n.3, 116 S. Ct. 2174, 135 L.Ed. 2d 606 (1996). The question arises how this conclusion can be squared with *Heck*, or with the ruling in *Nance* that only prospective relief is available in a prisoner's suit complaining of denial of access to the courts unless he has succeeded in getting his conviction annulled, since otherwise an effort to obtain damages would be blocked by *Heck*. That ruling seems to exclude a damages claim by a prisoner who has merely a colorable case.

*Hoard*, 175 F.3d at 533. According to Mason, the court in *Hoard* resolved the contradiction by allowing a claim for injunctive relief. Mason, however, contends that the contradiction, in the context of his case, would be too much for the Seventh Circuit because to rule otherwise "would give prison employees *carte blanche* authority to interfere with a prisoner's mail . . . , [which is] an outcome contrary to the right at issue." (Doc. 126 , p. 9).

The Court, however, disagrees with Mason's analysis of *Hoard*. Instead, the Seventh Circuit in *Hoard* described the paradox as "only apparent." *Hoard*, 175 F.3d at

533. The Seventh Circuit went on to explain that to get damages the plaintiff must prove

that he or she "lost something of monetizable value[.]" *Id.* The Seventh Circuit went on

to say that in the context "where the prisoner is complaining about being hindered in

his efforts to get his conviction set aside, the hindrance is of no consequence if the

conviction was valid, and so he cannot get damages until the conviction is invalidated."

*Id.* at 534. This is in contrast, for example, to a claim of being hindered in efforts "to

rectify illegal prison conditions." To obtain damages for such a claim, the plaintiff need

not show that he or she will prevail; rather, the plaintiff must show "that the claim [i]s

colorable and so had some value in the litigation market." Because colorable claims

have some settlement value (even if slight as a plaintiff can settle for more than $0), a

plaintiff can still show he or she was hindered in the pursuit of such a claim even if it is

relatively weak. *Id.* However, that is not the case with respect to a claim where *Heck* is

applicable as "there is nothing corresponding to a colorable claim" in such

circumstances. *Id.* As the Seventh Circuit stated, "either the conviction was invalid, in

which case the defendant suffered a legally cognizable harm, or it is not and he did

not." *Id.* Thus, *Hoard* makes perfectly clear that Mason has no legally cognizable claim

for damages unless his conviction is invalidated.

    Mason also cannot escape the *Heck* bar by arguing that he is not seeking damages

that would call into question the validity of his conviction. Mason asserts that due to the

mail interference, he "had to get an attorney for $40,000 to fight [his] murder case[.]"

(Doc. 126, p. 8). According to Mason, had it not been for the interference the Illinois

Innocence Project would have handled his case for free. Such a statement, however, is mere speculation at best, but even if the Court were to credit it, it would still not result in a viable denial of access to court claim. In *Nance*, the plaintiff had lost access to photocopies of cases that were in his possession but were misplaced when he was transferred, and as a result, he could not use them in arguing a motion. *See Nance*, 147 F.3d at 590. The plaintiff argued that he was not seeking damages for wrongful imprisonment, but rather for the value of his duplicated cases as a result of the interference. *Id.* at 591. The Seventh Circuit, however, noted that if the plaintiff was seeking "the value of the missing property the prisoner is not making an 'access' claim at all[]" and that he could seek redress in state court for such a claim. *Id.* at 592.

Here, Mason is in the same posture as the plaintiff in *Nance*. While it is true that the amount for duplicated copies of cases is far less than the $40,000 that Mason's family had to spend on an attorney, the analysis is still the same. Mason does not have an access claim at all; rather, he has an arguable claim for damages that can be pursued in state court. Moreover, unlike *Nance*, it is doubtful Mason has any claim for damages given that there is no constitutional right to an attorney in state post-conviction relief proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). As to Mason's access claim, Mason, through his retained attorney, clearly has all the access he needs to fight his underlying conviction, and thus, such a claim is wholly without merit. Therefore, the Court finds that Defendants are entitled to summary judgment on Mason's denial of access to courts claims in Counts I and II.

Next, Defendants argue they are entitled to summary judgment because Mason affirmatively fails to link any of the Defendants to the alleged mail interference. The Defendants rely on *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017). In *Colbert*, the plaintiff sued a number of officers under Section 1983 for damaging his property while conducting a search of his residence. *Id.* at 657. The Seventh Circuit granted summary judgment for the defendants because the plaintiff could not satisfy Section 1983's personal responsibility requirement. *Id.* The Seventh Circuit reasoned that the accused officers had denied responsibility and that the plaintiff admitted that he was unable to identify which of the ten officers had caused damage to the property. *Id.* The plaintiff further acknowledged that he could not make such an identification because he was not allowed in the rooms while the officers conducted their search. *Id.*

As to the Mailroom Defendants and the Internal Affairs Defendants, Mason contends that "he cannot identify any specific person in the mailroom who interfered with his mail on any specific occasion," and that "the law makes it impossible to prevail on the claim." (Doc. 126, p. 10). While that may be the case, *Colbert* is still controlling authority, and thus, the Court finds that with respect to Counts I and II, summary judgment is proper on this ground as well as to Defendants Gimber, Creath, Barbeau, Shemonic, Muzzy, Bradley, New, Scott, Buskirk, McCarty, Childs, Hughey, Ward, Zang and Dean.

Finally, the Court finds that Mason has not established that Lashbrook (Warden

from 2017-19), Rowold (Corrections Counselor), Butler (Warden from 2014-16), and Pierce (Grievance Officer) violated his constitutional rights when they failed to rectify the interference with his mail. Mason does not have a right to be present when mail is opened that is not from an attorney who represents him or from whom he seeks representation. *See Kaufman v. McCaughtry*, 419 F. 3d 678, 686 (7th Cir. 2005). But, Mason contends that legal oriented mail, as well as privileged mail from attorneys or from others from whom Mason was seeking representation, was opened outside his presence. As discussed above, however, Mason has not made a showing that the mail interference relating to his legal proceedings hindered his ability to pursue a legal claim or defense.

Mason attempts to sidestep this requirement by arguing that the sheer number of interferences is evidence of a pattern and practice of opening his legal mail that hindered his constitutional rights of access to the courts. Specifically, Mason relies on *Guajardo-Palma*, where the Seventh Circuit stated that "proof of a practice of reading a prisoner's correspondence with his lawyer ***should ordinarily be sufficient*** to demonstrate hindrance." *Guajardo-Palma*, 622 F.3d at 805 (emphasis added). The establishment of a pattern and practice, however, does not absolve a plaintiff from showing actual injury to sustain such a claim. In *Guajardo-Palma*, the Seventh Circuit noted that "[m]ost attorney-client communications consist of the client's describing what happened to him and the lawyer's explaining what legal theories might fit the client's factual narrative." *Id.* The Seventh Circuit went on to note that any interference with such mail was not likely to have a significant effect on a prisoner's access to the courts. *Id.* The Seventh Circuit

reasoned that such information would likely be disclosed to the other side during the course of litigation through briefs and pleadings and that the same information would be shared with prison officials prior to litigation as part of the grievance process, which is required to exhaust administrative remedies.[7] *Id.* As such, the Seventh Circuit noted that the interception of a prisoner's communications with his lawyer in civil litigation is subject to a harmless-error analysis. *Id.* at 806.

The Court proceeded to reject the plaintiff's claim that the jail's interferences with his attorney-client communications blocked his "access to meaningful justice." Specifically, the Seventh Circuit reasoned that the plaintiff "did not claim to be intimidated by the practice[,]" and he did not "offer[] [any] evidence that his ability to litigate any matter was affected by the defendants' actions." *Id.* Thus, *Guajardo-Palma* makes clear that even if a plaintiff can establish a pattern and practice of interference with privileged mail, the plaintiff is still required to prove actual injury.

---

[7]     Indeed, some of the mail interferences claimed by Mason appear to fall into this category. For example, Mason complains about interference with the mail sent to the Illinois Innocence Project. Clearly, Mason was attempting to get the Innocence Project to take his case so his correspondence with them would likely have included the facts and circumstances of his underlying conviction. The Seventh Circuit noted that interference with this type of material would be harmless.

     Moreover, while Mason contends that there were several instances where his legal mail was interfered with, the record clearly shows that Mason had a number of active cases. This, of course, generated a lot of correspondence to and from Mason, both of a legal and legally related nature. While Mason characterizes the interference as a pattern and practice, given the time frame involved (2 years) and the volume of mail produced by Mason's litigation, an argument could be made that such interferences were instead isolated. And, the Seventh Circuit in *Guajardo-Palma* held that isolated interferences with confidential communications would not be sufficient to state a claim. *See Guajardo-Palma*, 622 F.3d at 805. Regardless of whether the claimed interferences are part of a pattern or practice or merely isolated incidents, it does not matter because Mason has not established any actual injury.

In the instant case, it is evident that Mason has not shown that Defendants' conduct disadvantaged and prejudiced the pursuit of any of his legal claims. In fact, there is no evidence that the alleged interferences with Mason's mail had any adverse effect on his attempts to access the Court systems. For example, on September 20, 2016, Mason filed a lawsuit against William Spiller and then voluntarily dismissed that case on October 6, 2016. *See Mason v. Spiller*, 16-1070-NJR, Doc. 1, 5, 6. Additionally, as noted previously, Mason was able to settle three cases in August 2019.[8] Further, a check of *only* this Court's CM/ECF system reveals that in addition to this case, Mason has two more cases, *Mason v. Snell*, 19-1019-NJR and *Mason v. Cecil*, 19-1375-NJR pending in this judicial district.[9] For all of the above reasons, the Court finds that Defendants Lashbrook, Rowold, Pierce, and Butler are also entitled to summary judgment on Mason's claims in Counts I and II.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment. (Doc. 119). The Court finds in favor of Defendants Jacqueline Lashbrook, Courtney Buskirk, Kimberly Butler, Tyler Bradley, Robin Rowold, Caleb Zang, Cynthia Gimber, Misti New, Jessica Dean, Carrie Shemonic, Bryan Childs, Kyle Hughey, Kelly Pierce, Nathan McCarty, Falynne Muzzy, Nathanial Ward, Devon Hemann (Creath), Pam Scott

---

[8]     These three cases were filed in August 2017, September 2017, and October 2018, respectively.

[9]     Obviously, this list does not include any cases in other Illinois federal courts or in other Illinois state courts.

and Amy Barbeau and against Mickey Deangelo Mason. The Court enters judgment in favor of Jacqueline Lashbrook, Courtney Buskirk, Kimberly Butler, Tyler Bradley, Robin Rowold, Caleb Zang, Cynthia Gimber, Misti New, Jessica Dean, Carrie Shemonic, Bryan Childs, Kyle Hughey, Kelly Pierce, Nathan McCarty, Falynne Muzzy, Nathanial Ward, Devon Hemann (Creath), Pam Scott and Amy Barbeau and against Plaintiff Mickey Deangelo Mason on his First and Fourteenth Amendment claims in Counts I and II. The claims based on the First and Fourteenth Amendment as to Mason's civil suits are dismissed with prejudice. The claims based on the First and Fourteenth Amendment as to Mason's criminal proceedings are dismissed without prejudice as barred by *Heck v. Humphrey* and its progeny. Mason shall take nothing from this case. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

      **IT IS SO ORDERED.**

      **Dated: June 17, 2020.**

Digitally signed by
Magistrate Judge
Gilbert C. Sison
Date: 2020.06.17
14:03:48 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**